McBRIDE, Judge.
This is an action by a motor carrier to recover freight charges allegedly due by defendant in the amount of $998.23. From a judgment rendered in favor of plaintiff as prayed for, defendant has appealed. Pending the appeal, a motion was presented to this court setting forth that Viking Freight Company had superseded Cook Truck Lines, Inc., and the former was substituted as plaintiff-appellee in the place and stead of the latter.
The amount claimed by plaintiff is the aggregate transportation charges due on three separate lots of electrical supplies and equipment consigned “freight collect” by three different shippers in New York to defendant in New Orleans. Super Service Motor Freight Company, as initial carrier, conveyed the merchandise to Memphis, Tennessee, and there delivered it to Cook Truck Lines, Inc., for transportation and delivery to defendant in New Orleans. Said initial carrier received the three lots of freight from the shippers on different dates and issued to each a separate shipping order or bill of lading evidencing the delivery to and the receipt of the freight by the carrier, said documents setting forth the quantity and description of the goods shipped and the terms of the contract to transport and deliver the goods to the consignee. The weights of the shipments, as well as the freight rates, were also set forth.
The shipments were not transported together; they moved forward from New York separately, i. e. at different times. Cook Truck Lines, Inc., also received the shipments on different dates and made delivery to the consignee in New Orleans at different times.
Transportation charges under the published joint tariffs of said carriers vary according to the weight of the freight transported. On shipments of 22,000 or more pounds the rate is $2.15 cwt.; the rate on 4,500 pounds is $5.25 cwt., and on 5,000 pounds the rate is $4.86 cwt.
The defense interposed is that there was an overcharge because the rate or charge applied by the carriers violates a contract defendant had with them. It is contended that representatives of both the initial carrier and the delivering carrier agreed with an agent of defendant in New Orleans to carry the merchandise as one consolidated shipment totaling 25,122 pounds at a rate of $2.15 cwt., plus tax, or $555.33; that the carriers failed to respect said agreement and instead of consolidating the three lots of merchandise, carried the same under the three separate bills of lading at higher charges totaling $998.23. Defendant disavows liability for more than $555.33 which it alleges it tendered to plaintiff which refused to accept the same.
About February 22, 1956, Smith, a representative of Super Service Motor Freight Company, in company with Swanson, agent for Cook Truck Lines, Inc., visited Key, the president of Owesen & Company, Inc., the defendant, for the purpose of soliciting freight business. Key informed them he had purchased on behalf of his company from four concerns in and about New York certain merchandise which must be transported to his company’s establishment in New Orleans. A discussion ensued regarding a consolidation of the four lots of freight, and it appears Smith and Swanson agreed that their respective freight lines could and would carry the merchandise on a consolidated basis at the tariff rate of $2.15 cwt., plus tax, and a “pick up charge.” Key furnished Swanson the names of the four concerns in New York from whom his company had purchased the merchandise which awaited shipment to New Or *422 leans, together with their telephone numbers, in order that Swanson could communicate with the shippers and take care of all details connected with the consolidated shipment. Swanson transmitted the names of the prospective shippers to his company’s terminal at Nashville, Tennessee, and he knows nothing more regarding the matter. Smith declares he informed Key, when the latter sought a consolidated shipment, that the goods could only be transported on that basis if they moved on one bill of lading which Key must have the shippers in New York prepare. Smith further stated he furnished the shippers’ names to his company’s office at Memphis which in turn transmitted the information to the New York office. Smith maintains that his New York office contacted the shippers named by Key and that when inquiry was made of them, each stated they had no freight which then awaited shipment to Owesen & Company, Inc., in New Orleans. Defendant argues that the representative of Super Service Motor Freight Company in New York failed to explain to the shippers that he, Key, had given specific instructions that his company’s merchandise should be transported by said freight company on a consolidated basis, and that had this been told to the shippers, they would have cooperated by delivering the merchandise to Super Service Motor Freight Company for carriage to defendant as one shipment.
At any rate, three of the concerns in New York subsequently (on February 24, March 8 and March 9, 1956) shipped the merchandise defendant purchased from them under the separate bills of lading via Super Service Motor Freight Company for carnage to Memphis where the shipments, as has been said, were transferred to Cook Truck Lines, Inc., for transportation and delivery to defendant in New Orleans. The fourth concern mentioned by Key, Mohawk Electric Sales, dispatched defendant’s merchandise over the line of another motor carrier on a date not shown by the evidence.
Under the circumstances briefly related above, we do not believe it should be said that the freight rate applied by the carriers violated any contract defendant had made with them, and it is clear that this is not a case where a carrier has failed to follow the routing or shipping instructions given either by Key or the consignors in New York. Granted, had there been a consolidation of the shipments, defendant would have been required to pay a lesser transportation charge in accordance with the carriers’ tariff, but the Super Service Motor Freight Company contacted the four proposed shippers, as it agreed with Key it would do, and defendant’s plight cannot be attributed to negligence on the part of either of the carriers, because the four concerns all informed the Super Service Motor Freight Company they had no freight awaiting shipment to defendant.
The testimony of Smith, which Key did not deny, is that he informed Key initially that in order for Owesen & Company to reap the benefits flowing from a consolidation, the freight would have to move under one bill of lading which Key must have the shippers prepare. This requirement having been called to Key’s attention, our opinion is that his company should have taken steps to make sure that the concerns from which it expected the shipments would follow the carriers’ instructions and prepare one bill of lading covering all of the merchandise. After all, Owesen & Company, Inc., was much more concerned with how the merchandise would be shipped than the consignors in New York, and it should have notified them a consolidated shipment was desired. Defendant is liable for the full amount of the higher transportation charges demanded by plaintiff which result from the tariff rates as applied to the smaller shipments. The record before us shows that Cook Truck Lines, Inc., paid to the initial carrier its prorata of the transportation charges.
For said reasons, the judgment is affirmed.
Affirmed.